## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

UNITED STATES OF AMERICA                                      PLAINTIFF

v.                              No. 4:20-cr-35-DPM

MUHAMMAD ARIF                                                DEFENDANT

### ORDER

If sufficiently connected with interstate commerce, sex trafficking of children is a federal crime.  While driving the daughter of his handyman home, Muhammad Arif twice offered her $100 for oral sex. She was fifteen.  Both conversations occurred in Arif's Nissan Murano, which was manufactured in Mississippi.  Both trips started and stopped in White County, Arkansas.  Arif gave the victim $20 after the first conversation.  Were Arif's solicitations "in or affecting interstate commerce . . .[?]" 18 U.S.C. § 1591(a)(1).

Arif owns convenience stores in White County.  P.W.'s father worked for him doing flooring and other repairs.  The family is poor, often struggling to put food on the table and making do with only one vehicle.  Arif routinely gave P.W.'s father a ride to and from job sites. P.W. went along because she enjoyed helping her father.  On two occasions, having sent her father to another job site, Arif gave P.W. a ride home alone.  He used his vehicle as a means to isolate the teenager in a confined space away from her father and others at the convenience

store.   During each of these trips, Arif steered the talk into sexual matters and propositioned P.W., offering her money for oral sex. She declined.  She also had the presence of mind to record parts of their conversations on her cell phone.  At the end of the first ride, Arif gave her $20 to buy a birthday present for her boyfriend—as he repeatedly asked her to promise not to tell anyone about their conversation.  This was the key evidence, taken in its strongest terms, heard by the jury. After deliberations, the jury convicted Arif of violating the federal sex trafficking statute.

Arif's defense was that his actions didn't affect interstate commerce.  He argued this to the jury as a matter of the facts.  And he argued it to the Court as a matter of the facts and the law, moving for judgment of acquittal based on insufficient evidence at the close of the government's case.  The Court took that motion under advisement. Fed. R. Crim. P. 29(a) & (b).  Arif decided not to testify, and the defense rested without offering proof.  The Court gave the case to the jury. Later, the jury asked a question about interstate commerce, which the Court declined to answer after consulting with counsel.   After deliberating for some two hours, the jury returned its guilty verdict. With the benefit of counsel's oral arguments at the trial, the government's bench brief, and Arif's post-trial brief, the Court now turns back to the motion for acquittal.

Interstate commerce issues are famously murky. Under current doctrine, acting pursuant to the Commerce Clause, Congress may regulate the channels of interstate commerce, the instrumentalities of interstate commerce, and activities that substantially affect interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16-17 (2005); *United States v. Koech*, 992 F.3d 686, 691 (8th Cir. 2021). Recall the sex trafficking statute's words: it covers conduct "in or affecting interstate or foreign commerce . . .." 18 U.S.C. § 1591(a)(1). No contention is made that Arif's conduct was "in" interstate commerce. He did not, for example, transport P.W. across state lines. *Gonzales*'s first and second categories—channels and instrumentalities—are understood to involve activities in interstate commerce. *E.g., United States v. Ballinger*, 395 F.3d 1218, 1231 (11th Cir. 2005) (en banc). Rather, this case is in the third category: activities affecting interstate commerce.

How much effect is necessary to satisfy the statute? The most recent word from the Court of Appeals is not much. "These days, however, it does not take much for a criminal act to affect interstate commerce. Any actual impact, no matter how minor, will do." *United States v. Harris*, 83 F.4th 1093, 1096 (8th Cir. 2023) (citations and quotations omitted). A *de minimus* effect, though, must still be proven beyond a reasonable doubt. *E.g., Koech*, 992 F.3d at 694. It is settled law that using an instrumentality of interstate commerce is evidence of an

effect. *Koech*, 992 F.3d at 693. Instrumentalities include the internet, cell phones, vehicles, and the mail. *Harris*, 83 F.4th at 1096.

In *Koech* and *Harris*, a combination of this kind of evidence sufficed. In *Koech*, the sex trafficker advertised his victim on Facebook, set up appointments for sexual encounters by text and telephone (with a cellphone made in China), and traveled with her from Minnesota to Wisconsin to buy drugs with the money paid for the sexual acts. 992 F.3d at 693-94. In *Harris*, the defendant used the U.S. mail to send fraudulent documents, plus communicated with a confederate by Facetime and text. 83 F.4th at 1096. Here, the government points to the $20 Arif gave P.W. and his use of the vehicle.

The loaded gift of the money is insufficient. No authority is cited for the proposition that delivering legal tender, without more, satisfies § 1591's jurisdictional element. One case cited by the government, *United States v. Clements*, Case No. 5:23-cr-1389-MIS, 2024 WL 131070 (D.N.M. 11 January 2024), touched on this question. But Clements challenged the sufficiency of the indictment, not the sufficiency of the evidence at trial. More importantly, the Court declined to reach the using-money issue. *Clements*, 2024 WL 131070, at *7 n.10.

Consider, for example, the federal money laundering statute, 18 U.S.C. § 1956(c)(4). It employs a similar jurisdictional hook. "An effect on interstate commerce is an essential element of the offense of money laundering." *United States v. Evans*, 272 F.3d 1069, 1081

- 4 -

(8th Cir. 2001). In *Evans*, this element wasn't satisfied because the defendant made money from a prostitution conspiracy; it was satisfied because he "used proceeds generated from prostitution to purchase a used car." 272 F.3d at 1082.

In this case, the government offered no proof about where the $20 came from or where it went. No effect on interstate commerce was shown. *United States v. Grey*, 56 F.3d 1219, 1224-26 (10th Cir. 1995). Perhaps the jury speculated that P.W. bought her boyfriend that birthday present with it. She did not say this happened, or hint that it did, though. Given her family's difficult financial circumstances, the jury may have inferred that she spent the money on some necessity. That's a reasonable inference; but it is not proof beyond a reasonable doubt sufficient to support a conviction. It is not evidence that leaves one firmly convinced or evidence that one would confidently rely upon in making one of life's most important decisions. *Doc. 49 at 5* (Jury Instruction No. 7). And, if simply giving money to someone qualifies as affecting interstate commerce, that proves too much. It demonstrates that a federal police power exists, contrary to the Constitution's letter. The Court must avoid a construction of § 1591 that would raise a serious constitutional issue. *Jones v. United States*, 529 U.S. 848, 857-58 (2000). That leaves Arif's Murano.

The United States rightly emphasizes how important the vehicle was in what happened. The victim needed a ride. Arif's vehicle

provided close quarters. It isolated her. And a vehicle, including this one, is an instrumentality of interstate commerce. *Robinson*, 62 F.3d at 236-37; *United States v. Windham*, 53 F.4th 1006, 1013 (6th Cir. 2022). But how did Arif's use of the vehicle in these ways affect interstate commerce?

In Harris's case, postage was paid to send the fraudulent paperwork. The mails are not free. Though neither *Harris* nor *Koech* draws out the point, using the internet, text messaging, and making calls on a cell phone are not things that occur, in the usual course, within one state. Our nation's telecommunications system is a web in many senses of that word. *United States v. Trotter*, 478 F.3d 918, 921 (8th Cir. 2007). When one strand is touched, an effect on the whole, albeit minor, occurs.

The potential danger is in conflating the three categories outlined in *Gonzales*, in thinking that because some instrumentality was connected with the crime, interstate commerce was therefore affected. But that isn't necessarily true. Many statutes say that the commerce element is satisfied by "using an instrumentality" or similar words. *E.g.*, 18 U.S.C. § 2422(b) (enticement); 18 U.S.C. § 1201 (kidnapping); 18 U.S.C. § 1958(a) (murder for hire). The sex trafficking statute does not adopt this formulation. "The commerce element in § 1591(a)(1) is conduct 'in or affecting interstate commerce,' not use of an instrumentality of interstate commerce." *Koech*, 992 F.3d at 693. In at

-6-

least one statute, the jurisdictional element can be satisfied either by "using an instrumentality" or by being "in or affecting" interstate commerce. 18 U.S.C. § 844(e) (bomb threat). It follows that the phrase Congress adopted for sex trafficking—"in or affecting interstate or foreign commerce"—must mean something a bit different than mere use of an instrumentality. This crime requires some actual effect, however small, on interstate commerce. *Harris*, 83 F.4th at 1096; *Koech*, 992 F.3d at 692.

Without question, using an instrumentality, such as Arif using his vehicle, is evidence the jury could consider in deciding whether Arif's crime affected interstate commerce. *E.g., Koech*, 992 F.3d at 693. The Court so instructed this jury. *Doc. 49 at 8-9*. But, giving the facts proven, and all the reasonable inferences from those facts, their greatest possible weight, was there enough evidence to show any actual effect on interstate commerce through the vehicle here? Arif argues there is none, the location of the solicitations was, in his telling, incidental. The government counters that the location was essential. It says that, if Arif had propositioned the victim as they stood beside the vehicle in the convenience store's parking lot, there would have been no federal crime. The vehicle, the government continues, was the essential ingredient both as a matter of fact (the isolating place) and of law (the effect on interstate commerce by using an undisputed instrumentality of commerce).

The government has the better of the location dispute, but that victory does not answer the deep question.  The Murano was an essential part of Arif's solicitation.  And sex trafficking is inherently commercial—that's the point, using another person to make money, or get something of value, in return for sexual acts, or being the customer in that kind of deal.  The government, however, did not prove beyond a reasonable doubt that Arif's use of his vehicle had any effect, even a minor one, on interstate commerce.  Unlike in *Harris* and *Koech*, Arif's crime didn't affect interstate commerce through the internet, telephone calls, or the mail.  His Mississippi-made vehicle was connected with interstate commerce, but his crime did not affect that stream. *Compare Jones*, 529 U.S. at 854-57.  If the sex-trafficking statute's limiting word—*affecting* interstate commerce—is to carry any meaning, then the government's proof here falls short.   *United States v. Quigley*, 53 F.3d 909, 911 (8th Cir. 1995).

Sex trafficking of children is also a crime under state law. Arif was originally charged with violating Arkansas Code Annotated § 5-18-103(c)(2).  That crime carries a ten-year mandatory minimum sentence, as § 1591 does when applied to the facts of this case.  The state statute does not require proof of any effect on interstate commerce. The state charge was voluntarily dismissed without prejudice after the federal charge was filed.  The government doesn't dispute that this

charge can be refiled and pursued as a matter of Arkansas law, which contains the great reserve of police power. *Jones*, 529 U.S. at 858.

*   *   *

Arif's oral motion for judgment of acquittal is granted. The Court sets the jury's verdict aside. His motion for release from custody, *Doc. 67*, is denied as moot. The Court directs the Clerk to send a copy of this Order to the U.S. Marshal. And the Court orders the Marshal to release Arif from custody. Judgment will issue.

So Ordered.

D.P. Marshall Jr.
United States District Judge

24 May 2024